Day, J.
 

 Is Section 10503-18, General Code, constitutional? Does it deprive the heirs of Clara H. Stoddard of their vested or property rights without due process of law? Does it establish a presumption of the order of death contrary to the facts? These are the major questions raised by plaintiffs in error and we shall consider them in their order.
 

 To determine whether Section 10503-18, General
 
 *628
 
 Code, is constitutional, it is necessary for us to ascertain whether, in its enactment, the General Assembly has exceeded the limitations placed upon it by the Constitution.
 

 The power to make laws is conferred upon the General Assembly by Article II, Section 1, of the Constitution of Ohio, which reads as follows: ‘£ The
 
 legislative power of the state shall be vested in a general assembly
 
 [italics ours] consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the general assembly, except as hereinafter provided; and independent of the general assembly to propose amendments to the constitution and to adopt or reject the same at the polls. The limitations expressed in the constitution, on the power of the general assembly to enact laws, shall be deemed limitations on the power of the people to enact laws.”
 

 This power thus vested in the General Assembly is general and not limited.
 
 Baker
 
 v.
 
 City of Cincinnati,
 
 11 Ohio St., 534, 542. The language of the Constitution is that “The legislative power of the state shall be vested in a general assembly” and not that “The general assembly shall have only such legislative power as is expressly conferred upon it by the Constitution.” So long as legislative enactments do not contravene any constitutional prohibitions they are valid. 8 Ohio Jurisprudence, “Constitutional Law,” Section 137, at page 242.
 

 In the enactment of legislation the General Assembly is vested with wide discretion.
 

 “The fundamental limitations * * * upon the exercise of legislative power, are those imposed by
 
 *629
 
 the Constitution. # * * It is commonly observed that one must look to the provisions of the Constitution to see how far and to what extent the legislative discretion is qualified, restricted, or prohibited.” 8 Ohio Jurisprudence, “Constitutional Law,” Section 146, at page 249.
 

 The legislative power of the General Assembly is plenary. “Whatever limitation is placed upon the plenary grant of legislative power must be found in a clear prohibition by the Constitution. The limitations upon the exercise of legislative power are special. When, therefore, the power of the legislature to enact a given law is disputed, the question is whether such exercise of power is clearly prohibited. The grant of power being general, the question is as to the existence of a limitation, arising from special prohibition. Such prohibition must either be found in express terms, or be clearly inferable, by necessary implication, from the language of the instrument [Constitution], when fairly construed according to its manifest spirit and meaning. The legislative power is generally deemed ample to authorize the enactment of a law, unless the legislative discretion has been qualified or restricted by the Constitution in reference to the subject-matter in question.” 8 Ohio Jurisprudence, “Constitutional Law,” Section 147, at page 251.
 

 Now what is the power of the judiciary with reference to legislative enactments? Its power to declare legislative enactments unconstitutional is not a superior power, neither one of veto nor of greater wisdom. It is rather a power burdened with a duty — a duty to determine in particular cases whether the Legislature has reached and passed the extreme boundary of its legislative power.
 

 For some time courts have been the targets of public criticism for being “too prone to find constitutional objections to legislation.” To curb this judicial power, Article IV, Section 2, was added to the Consti
 
 *630
 
 tution of Ohio. It provides that “No law shall be held unconstitutional and void by the supreme court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the court of appeals declaring a law unconstitutional and void.”
 

 The wisdom, policy, propriety or expediency of legislation is not,subject to judicial inquiry. “These are matters purely of legislative deliberation and cognizance. The judiciary can not substitute its judgment for the legislative discretion, unless, of course, there is a clear and palpable abuse of power.” 8 Ohio Jurisprudence, “Constitutional Law,” Section 191, at page 292.
 

 Having thus defined the respective powers of the General Assembly and of the courts with respect to statutory enactments, we now proceed to a consideration of the contention that Section 10503-18, General Code, deprives the heirs of Clara H. Stoddard of their property without due process of law by establishing a conclusive presumption of the order of death contrary to fact. That section provides:
 

 “When there is no evidence of the order in which the death of two or more persons occurred, no one of such persons shall be presumed to have died first, and the estate of each shall pass and descend as though he had survived the other or others. When the surviving spouse or other heir at law or legatee dies within three days after the date of death of the decedent, or within thirty days after the date of death of such decedent if such death resulted from a common accident, the estate of such first decedent shall pass and descend as though he had survived such heir at law or legatee. The provisions of this section shall prevail over the right of election of a surviving spouse. ’ ’
 

 A careful reading of the statute will disclose that, in fact, it establishes no presumption of the order of death. It provides that “no one of such persons shall be presumed to have died first”; that the estate of
 
 *631
 
 such first decedent shall pass and descend
 
 as though
 
 he had survived such heir at law or legatee. The right to ijidulge in a presumption of the order of death is expressly prohibited therein. It does, however, direct the course of descent and distribution of property of those who have died within the time and in the manner therein described. This is clearly within the constitutional powers of the General Assembly and does not constitute deprivation of property without due process of law.
 

 The right to transmit or inherit property is not an inherent or natural right (9 L. R. A. [N. S.], 121;
 
 Gilpin
 
 v.
 
 Williams,
 
 25 Ohio St., 283, 297;
 
 Pollock
 
 v.
 
 Speidel,
 
 27 Ohio St., 94;
 
 Patton
 
 v.
 
 Patton,
 
 39 Ohio St., 590, 597;
 
 State, ex rel. Taylor, Jr., Pros. Atty.,
 
 v.
 
 Guilbert,
 
 70 Ohio St., 229, 249, 71 N. E., 636, 1 Ann. Cas., 25), but is purely a statutory right and subject to legislative control and restriction.
 
 State, ex rel. Taylor,
 
 v.
 
 Guilbert, supra;
 
 8 Ohio Jurisprudence, “Constitutional Law, ’ ’ Section 392, at page 528;
 
 Evans
 
 v.
 
 Price,
 
 118 Ill., 593, 8 N. E., 854;
 
 In re Walker’s Estate, Lane
 
 v.
 
 Walker,
 
 110 Cal., 387, 42 P., 815.
 

 “The right to make a disposition of property by will is neither a natural, nor, in the United States, a constitutional right. It is solely the product of statutory enactment * * V The testamentary privilege, and its extent and limitation, depend wholly upon statute, not only as to their existence, but as to the mode in which it may legally be exercised. The Legislature, both in England and the United States, has repeatedly prescribed to whom property may be given by will, how much may be disposed of by will in particular cases, and what species of interest will be wholly exempt from testamentary disposition. And as the Legislature has conferred the power, so the Legislature may restrain its operation, confine it to particular classes of persons, or abolish it altogether, so far as the wills of persons who die after the enactment of
 
 *632
 
 the statute are concerned.” 1 Underhill on "Wills, 23, Section 16.
 

 A person can not of course be divested of his vested rights without due process of law, and a present vested right “can in no wise be affected by the laws of descent and distribution.”
 
 Oleff, Admr.,
 
 v.
 
 Hodapp, ante,
 
 432.
 

 There are no heirs, but only heirs apparent, to the living, persons with mere expectancies or possibilities of inheritance which may be fulfilled or defeated, depending upon various contingencies and situations. An heir apparent, therefore, has no vested right in the estate of his ancestor prior to the latter’s death, and consequently no vested property rights therein. Legislation dealing with estates of persons who die after its effective date does not deal with vested rights. Plaintiffs in error, having had no present vested rights in the estate of Joseph M. Stoddard at the time the statute in question went into effect, could not have been'deprived thereof.
 

 A legislative enactment, repealing, modifying or changing the course of descent and distribution of property and the right to inherit or transmit property, is not an unlawful interference with or deprivation of vested rights, and, unless expressly inhibited by constitutional provision, is to be deemed valid.
 

 We find nothing constitutionally objectionable in Section 10503-18, General Code.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Zimmerman, JJ., concur.