In re MYERS.

[Cite as *In re Myers* (1995), 107 Ohio App.3d 489.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–941023.

Decided Nov. 22, 1995.

■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■

*Kepley, MacConnell & Eyrich, John W. Eilers* and *Francis X. Lee; Jones, Copeland, Lefkovitz & Greer, Taylor W. Jones* and *David N. Lefkovitz,* for appellant.

*Taft, Stettinius & Hollister, Daniel J. Hoffheimer* and *Raymond W. Lembke,* for appellee.

GORMAN, Presiding Judge.

On June 2, 1995, this court overruled the executor's motion to dismiss this appeal based upon the contention that the trial court's order denying admission of counsel *pro hac vice* was not appealable. During oral argument, however, the panel *sua sponte* announced that it would reconsider whether the trial court's order was final for purposes of this court's subject-matter jurisdiction conferred by Section 3(B)(2), Article IV, Ohio Constitution and R.C. 2505.02. See *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 89, 541 N.E.2d 64, 66.

■ The order denying the admission of David N. Lefkowitz as counsel *pro hac vice* arises out of the executor's application to probate the will for the estate of Rena F. Myers, deceased, in Hamilton County. The order did not determine the action or prevent a judgment. Therefore, pursuant to R.C. 2505.02, for the order to be immediately appealable it must affect a substantial right and be made in a special proceeding. As defined in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213, paragraphs three and four of the syllabus, a special proceeding is an action that was not recognized at common law or in equity but was, rather, specially created by statute. Absent the fact that the order was one made in a special proceeding, the question of whether an order affects a substantial right is not determinative of a party's right to appeal. *Id.*[1]

---

1. The difficulties of applying *Polikoff* are manifest. At a practical level, depending upon the type of action involved, *Polikoff* may require an in-depth knowledge of English and American common law. That such knowledge cannot be taken for granted is demonstrated by the fact that the Ohio Supreme Court has had to admit error in this regard: in *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 616 N.E.2d 181, the court, applying the test in *Polikoff,* held that an action for prejudgment interest was a special proceeding because the action was not known at common law; in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, however, the court corrected itself, holding that such actions were indeed known at common law and were not, therefore, special proceedings.

Moreover, if read literally, the syllabus of *Polikoff,* as one court has noted, "renders all orders in suits that were recognized at common law as not being final appealable orders."

■  The order appealed from in this case arises from an action to admit a will to probate.  The initial question is whether such an action existed at common law or equity, as opposed to being created by statute.  The answer is expressly set forth in *Ostrander v. Preece* (1935), 129 Ohio St. 625, 631, 3 O.O. 24, 27, 196 N.E. 670, 673:

"The right to transmit or inherit property is not an inherent or natural right [*Nunnemacher v. State* (1906), 129 Wis. 190, 108 N.W. 627] (9 L.R.A. [N.S.], 121; *Gilpin v. Williams* [ (1874) ], 25 Ohio St., 283, 297; *Pollock v. Speidel* [ (1875) ] 27 Ohio St. [86], 94; *Patton v. Patton* [ (1883) ] 39 Ohio St., 590, 597; *State, ex rel. Taylor, Jr., Pros. Atty., v. Guilbert* [ (1904) ], 70 Ohio St., 229, 249, 71 N.E. 636, 1 Ann.Cas., 25), but is purely a statutory right and subject to legislative control and restriction.  *State, ex rel. Taylor, v. Guilbert, supra;*  8 Ohio Jurisprudence, 'Constitutional Law,' Section 392, at page 528;  *Evans v. Price* [ (1886) ], 118 Ill., 593, 8 N.E., 854; *In re Walker's Estate, Lane v. Walker* [1895], 110 Cal., 387, 42 P., 815.

" 'The right to make a disposition of property by will is neither a natural, nor, in the United States, a constitutional right.  It is solely the product of statutory enactment * * *.  The testamentary privilege, and its extent and limitation, depend wholly upon statute, not only as to their existence, but as to the mode in which it may legally be exercised.  The legislature, both in England and the United States, has repeatedly prescribed to whom property may be given by will, how much may be disposed of by will in particular cases, and what species of interest will be wholly exempt from testamentary disposition.  And as the Legislature has conferred the power, so the Legislature may restrain its operation, confine it to particular classes of persons, or abolish it altogether, so far as the wills of persons who die after the enactment of the statute are concerned.'  1 Underhill on Wills, 23, Section 16."

As stated succinctly in *Hunter's Case* (1834), 6 Ohio 499, 501–502:

"The application to make probate of a will is not included in the definition either of an action or suit.  It belongs neither to the common law nor equity jurisdiction conferred upon the court of common pleas, but appertains to the ecclesiastical jurisdiction of the English courts, which is specially conferred upon courts of common pleas as courts of probate."

---

*Stevens v. Grandview Hosp. & Med. Ctr.* (Oct. 20, 1993), Montgomery App. No. 14042, unreported, 1993 WL 420127.  This court made a similar observation in *Niemann v. Cooley* (1994), 93 Ohio App.3d 81, 637 N.E.2d 943, in which we further emphasized the incongruity of holding identical orders appealable or nonappealable depending upon the type of action in which they arose.

Having determined that the underlying action in the present case did not exist at common law or equity but was, rather, created by statute, we hold pursuant to *Polikoff* that the action is a "special proceeding." The next question that must be asked, therefore, is whether the order appealed from affects a "substantial right." *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 297, 638 N.E.2d 999, 1003.

As stated by the court in *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d 60, 63, 616 N.E.2d 181, 184, a case decided on the same day as *Polikoff*:

"An order which affects a substantial right has been perceived to be one which, if not immediately appealable, would foreclose appropriate relief in the future. See, generally, *Union Camp Corp. v. Whitman* (1978), 54 Ohio St.2d 159, 162, 8 O.O.3d 155, 157, 375 N.E.2d 417, 419–420; *State v. Collins* (1970), 24 Ohio St.2d 107, 110, 53 O.O.2d 302, 303–304, 265 N.E.2d 261, 263; *Morris v. Invest. Life Ins. Co.* (1966), 6 Ohio St.2d 185, 189, 35 O.O.2d 304, 306, 217 N.E.2d 202, 206; *In re Estate of Wyckoff, supra,* [ (1957) ] 166 Ohio St. [354] at 359, 2 O.O.2d [257] at 260, 142 N.E.2d [660] at 664."

The order which is appealed from in the present case is the trial court's order denying admission of counsel *pro hac vice*. In *Russell v. Mercy Hosp.* (1984), 15 Ohio St.3d 37, 15 OBR 136, 472 N.E.2d 695, a pre-*Polikoff* case, the Ohio Supreme Court determined that an order to disqualify counsel affects a substantial right. Specifically, the court held that when a motion for disqualification is granted, "a legitimate interest of a party is necessarily implicated—the right to counsel of one's choice." *Id.* at 41, 15 OBR at 139, 472 N.E.2d at 698. Further, the court determined that delaying the review of orders disqualifying counsel would "in most instances be irreparable," given the difficulty in demonstrating prejudice upon appeal even if the order were found to be in error. *Id.* As noted by the court, "[t]he argument in most cases would quickly degenerate into speculation and hindsight" requiring the reviewing court to decide "whether and how the original counsel might have handled the matter differently." *Id.* at 40, 15 OBR at 138, 472 N.E.2d at 697.

More recently, in *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 178, 631 N.E.2d 119, 121, the court determined that an order disqualifying an attorney during a *criminal* case is not a final appealable order pursuant to *Polikoff*. This conclusion, however, was dictated by the fact that criminal actions existed at common law; therefore, *Keenan* must be viewed foremost as an application of the definition of a "special proceeding" contained in the syllabus of *Polikoff*.

In addressing the issue of whether an appeal is an adequate remedy for a criminal defendant whose counsel has been disqualified, however, the court in *Keenan* indicated that it still considered its analysis in *Russell* valid with respect

to the lack of effective posttrial review of an order disqualifying counsel in a civil case. The court stated:

"[A]ppeal is an adequate remedy here. An appeal following conviction and sentence would be neither impractical nor ineffective since any error in granting the motion would, in certain circumstances, be presumptively prejudicial. *Flanagan v. United States* (1984), 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288, 296. *This court recognized and distinguished granting motions to disqualify counsel in criminal and civil cases in Russell, 15 Ohio St.3d at 42–43, 15 OBR at 141, 472 N.E.2d at 699–700, noting distinct reasons for differing results in the two types of cases regarding the effectiveness of post-trial review.*" (Emphasis added.) *Keenan,* 69 Ohio St.3d at 179, 631 N.E.2d at 122.[2]

Finally, we note that the United States Supreme Court has determined that an order disqualifying counsel in a civil case is not a final judgment on the merits of the litigation for purposes of Section 1291, Title 28, U.S.Code.[3] *Richardson–Merrell, Inc. v. Koller* (1985), 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340. Prior to *Koller,* the court had determined in *Flanagan v. United States* (1984), 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (cited in *Keenan* ), that a trial court's pretrial order granting disqualification of defense counsel in a criminal case was not immediately appealable as a collateral order under Section 1291. Whether the same held true in a civil case had caused a division in the federal courts of appeals.[4] In resolving this conflict, the court expressly rejected the view, which was relied upon heavily by the lower court in *Koller* and by the Ohio Supreme Court in *Russell,* that an order disqualifying counsel is unreviewable on appeal of

---

2.. The distinction drawn between civil and criminal cases in *Keenan* is at odds with dictum in the court's previous decision of *State v. Murphy* (1990), 49 Ohio St.3d 293, 294, 551 N.E.2d 1292, 1294, fn. 1, which noted that the substantial interest implicated in *Russell, i.e.,* the right to counsel of one's choice, would appear to compel a similar standard in a criminal case. Interestingly, although the court in *Keenan* never did expressly comment upon the effect of *Polikoff* on *Russell,* the court, by use of a "but cf." signal, cited the case of *Stevens v. Grandview Hosp. & Med. Ctr.,* discussed in fn. 1, *supra.* In *Stevens,* the Second District Court of Appeals balked at applying the syllabus of *Polikoff* literally and instead relied upon the analysis in *In Re Estate of Wyckoff* (1957), 166 Ohio St. 354, 2 O.O.2d 257, 142 N.E.2d 660, which was cited in *Polikoff,* to conclude that a motion to disqualify an attorney, even in a common-law malpractice action, was a "special proceeding." We need not engage in such gymnastics here, however, because, as we have seen, a probate action, unlike a malpractice action, did not exist at common law and is therefore a "special proceeding" even under a strict literal application of the *Polikoff* syllabus.

3. Section 1291, Title 28, U.S.Code grants federal courts of appeals jurisdiction over appeals from all final decisions of the district courts except where direct appeal lies to the Supreme Court.

4. Cf. *Gibbs v. Paluk* (C.A.5, 1984), 742 F.2d 181, and *Kahle v. Oppenheimer & Co.* (C.A.6, 1984), 748 F.2d 337, with *Banque de Rive, S.A. v. Highland Beach Dev. Corp.* (C.A.11, 1985), 758 F.2d 559, and *Interco Sys., Inc. v. Omni Corporate Serv., Inc.* (C.A.2, 1984), 733 F.2d 253.

a final judgment because it would be virtually impossible to show prejudice. The Supreme Court rejected the prejudice argument, however, because it had never held that prejudice was a prerequisite to reversal of a judgment following disqualification of counsel in either criminal or civil cases, and because the finality requirement of Section 1291 was not satisfied given its holding that orders disqualifying counsel were not sufficiently separable from the merits to qualify for interlocutory appeal. *Id.* at 436–40, 105 S.Ct. at 2764–2766, 86 L.Ed.2d at 350–352.

Being an interpretation of its own final judgment rule as embodied in a federal statute, Section 1291, the court's decision in *Koller* is not, of course, binding on the Ohio Supreme Court's interpretation of R.C. 2505.02. As noted by one treatise writer, state jurisdictions vary greatly in their approach to interlocutory appeals and "[w]ithout doubt, the federal courts are among the most strict in adhering to the finality requirement." Friedenthal, Civil Procedure (1985) 583, Appeals, Section 13.1.

*Polikoff,* by overruling the balancing test adopted in *Amato v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452, was clearly an attempt by the Ohio Supreme Court to move more in the direction of the federal courts by tightening the requirements of finality. As noted,[5] when read literally, the syllabus of *Polikoff* eliminates all interlocutory appeals in actions that existed in common law or equity. Were this case not one involving a special proceeding because of the unique historical origins of probate, there would be no question that, under *Polikoff,* the order denying David Lefkovitz the opportunity to appear *pro hac vice* would not be appealable. Moreover, regardless of the underlying action, there are whole species of orders which the Ohio Supreme Court apparently now considers inherently interlocutory and not entitled to immediate review because they are merely adjunct to the primary proceedings. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph seven of the syllabus ("Discovery orders are interlocutory and, as such, are neither final nor appealable."), overruling *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877, and *State v. Port Clinton Fisheries, Inc.* (1984), 12 Ohio St.3d 114, 12 OBR 157, 465 N.E.2d 865.

At present, however, the Ohio Supreme Court has not expressly adopted the logic of *Koller* and continues to cite *Russell.* We must assume, therefore, that *Russell* remains valid authority with respect to whether, in an action that is a special proceeding under *Polikoff,* an order disqualifying counsel affects a substantial right. As noted, under the analysis of *Russell,* disqualification affects a substantial right because it implicates a significant interest—the right to choose

---

5.  See fn. 1, *supra.*

one's own counsel—and is not subject to effective post-trial review. Having concluded that this particular aspect of *Russell* still survives *Polikoff,* we must go on to address the question whether the analysis in *Russell* applies with equal force here.

The interest sought to be protected in *Russell* was, as we have seen, the right to counsel of one's choice. It does not disparage this right to note that it is not absolute. Unlike the situation in *Russell,* in which an Ohio citizen was denied Ohio counsel, we are here concerned with a person's attempt to have counsel not a member of the Ohio bar represent him in an Ohio court. Lawyers not admitted in Ohio "have no absolute right under state or federal law to practice in Ohio," *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33, 27 OBR 447, 449, 501 N.E.2d 617, 620, and consequently citizens of Ohio cannot claim an absolute right to have them appear in their behalf. Rather, as both parties agree, the decision whether to grant a motion to appear *pro hac vice* is consigned to the sound discretion of the trial court. *Guccione v. Hustler Magazine* (1985), 25 Ohio App.3d 48, 25 OBR 182, 495 N.E.2d 586.

Not only is the interest implicated here different from that in *Russell,* but the motion and the facts underlying the motion are also considerably different. In *Russell,* counsel was removed from the case because of a conflict of interest; the disqualification was, therefore, absolute. In contrast, at the time the motion for David Lefkovitz to appear *pro hac vice* was made, the appellant here had already retained an Ohio probate attorney. The appellant had, therefore, to a large degree exercised his right to freely select Ohio counsel.

Moreover, after the executor filed written opposition to the motion to admit David Lefkowitz *pro hac vice,* the appellant's Ohio trial counsel filed a written reply asserting that David Lefkovitz would only be "admitted as co-counsel and that the undersigned would remain as trial counsel." In sum, what we have in the present case is a situation in which the trial court has simply refused the motion of a foreign attorney to appear *pro hac vice* not as trial counsel but merely as designated cocounsel in the proceedings. Unlike the absolute disqualification due to a conflict of interest in *Russell,* there is nothing in the trial court's order denying the motion to appear *pro hac vice* which would prohibit David Lefkovitz from remaining in the case of counsel and continuing to advise appellant.

It is difficult, therefore, to see how the analysis in *Russell* remains applicable to the case at bar. The core concern in *Russell* was the difficulty in establishing prejudice upon review, *i.e.,* the problem of discerning with hindsight "whether and how the original counsel might have handled the matter differently." *Russell, supra,* 15 Ohio St.3d at 40, 15 OBR at 138, 472 N.E.2d at 697. Such a

concern, however, is appropriate only where the disqualification of the attorney effectively removes counsel from any further involvement in the case.

Patently, unlike the complete disqualification of counsel in *Russell,* the order of the trial court denying David Lefkovitz from appearing *pro hac vice* as cocounsel does not substantially affect the right of appellant to counsel of his choice since it does not otherwise impede Lefkovitz's involvement in the case in an advisory or of-counsel capacity. Moreover, should Lefkovitz decide to remain involved in the case in this capacity, any prejudice which the appellant perceives as a result of Lefkovitz's failure to appear as designated "cocounsel" in the proceedings can be effectively brought to the trial court's attention through appellant's chosen Ohio trial counsel, thus preserving error and thereby ensuring effective post-trial review.

Based upon all these factors, we conclude that, although the order appealed from is one made in a special proceeding, it is not one that affects a substantial right, and therefore it is not a final order under R.C. 2505.02. Consequently, this court is without jurisdiction to hear the appeal and the matter is *sua sponte* dismissed.

*Judgment accordingly.*

HILDEBRANDT and SUNDERMANN, JJ., concur.